TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-09-00548-CV






Ultimate Ford, Inc., d/b/a Ultimate Ford Giddings; and Weatherby Ford, Inc.

d/b/a Ultimate Ford, Appellants


v.


Motor Vehicle Division of the Texas Department of Transportation

and Ford Motor Company, Inc., Appellees






DIRECT APPEAL FROM THE MOTOR VEHICLE DIVISION

OF THE TEXAS DEPARTMENT OF TRANSPORTATION





M E M O R A N D U M O P I N I O N


 Ultimate Ford, Inc. d/b/a Ultimate Ford Giddings and Weatherby Ford, Inc.
d/b/a Ultimate Ford (the Dealerships) appeal a final order of the Motor Vehicle Division,
Texas Department of Transportation (the Division), finding that good cause existed for Ford Motor
Company to terminate its franchise agreements with the Dealerships. (1) The Dealerships bring several
complaints on appeal that all center on the fact that Ford's statutorily required notice of termination
to the Dealerships was based on an outdated version of the applicable statute. We will affirm the
Division's order.


BACKGROUND

 The Dealerships do not challenge the Division's findings of underlying fact. These
findings reflect that between 1999 and 2001, Mohammed Assadi acquired sole ownership of
two franchised Ford dealerships, Ultimate Ford in Hubbard (Hubbard Ford) and Ultimate Ford
Giddings (Giddings Ford). Both Dealerships encountered financial distress for various reasons. In
March 2005, after Assadi's floor plan lender, Ford Motor Credit Company, notified Assadi that the
Dealerships were out of trust in the amount of $399,000, both Dealerships filed bankruptcy petitions.
Over the next eighteen months, the Dealerships were each in and out of bankruptcy twice, and
Hubbard Ford was twice seized and shut down for failure to pay local taxes.

 In May 2006, the bankruptcy court authorized Ford to begin the process
of terminating the Dealerships' franchises. By letters dated June 27, 2006, Ford served Assadi
with notices of termination for both Dealerships. At relevant times, section 2301.453 of the
occupations code required the following of Ford:


(a) Notwithstanding the terms of any franchise, a manufacturer, distributor, or
representative may not terminate or discontinue a franchise with a franchised
dealer . . . unless the manufacturer, distributor, or representative provides
notice of the termination or discontinuance as required by Subsection (c) and:


 (1) the manufacturer, distributor, or representative receives the dealer's
informed written consent;


 (2) the appropriate time for the dealer to file a protest under Subsection
(e) has expired; or


 (3) the board makes a determination of good cause under Subsection (g).


. . . 


(c) Except as provided by Subsection (d), the manufacturer, distributor, or
representative must provide written notice by registered or certified mail to
the dealer and the board stating the specific grounds for the termination or
discontinuance. The notice must:


 (1) be received not later than the 60th day before the effective date of the
termination or discontinuance; and


 (2) contain on its first page a conspicuous statement that reads: 
"NOTICE TO DEALER: YOU MAY BE ENTITLED TO FILE A
PROTEST WITH THE TEXAS MOTOR VEHICLE BOARD IN
AUSTIN, TEXAS, AND HAVE A HEARING IN WHICH YOU
MAY PROTEST THE PROPOSED TERMINATION OR
DISCONTINUANCE OF YOUR FRANCHISE UNDER THE
TERMS OF CHAPTER 2301, OCCUPATIONS CODE, IF YOU
OPPOSE THIS ACTION."


(d) Notice may be provided not later than the 15th day before the effective date
of termination or discontinuance if a licensed dealer fails to conduct its
customary sales and service operations during its customary business hours
for seven consecutive business days. . . . 



Tex. Occ. Code Ann. § 2301.453 (West 2004). (2) The letters notified Assadi that the terminations
were based in part on "failure to function in the ordinary course of business for more than
seven consecutive business days, and inability of the Dealer to meet debts as they mature." The
letter set an effective date for the termination of fifteen days after Assadi's receipt of the notice,
subject to extensions if Assadi requested and pursued a conference with Ford's Dealer Policy Board. 
 At the top of each of Ford's notice-of-termination letters was printed the following: 


NOTICE TO DEALER: YOU MAY BE ENTITLED TO FILE A PROTEST
WITH THE TEXAS MOTOR VEHICLE COMMISSION IN AUSTIN, TEXAS
AND HAVE A HEARING IN WHICH YOU MAY PROTEST THE
PROPOSED TERMINATION OR NONCONTINUANCE OF YOUR
FRANCHISE UNDER THE TERMS OF THE TEXAS MOTOR VEHICLE
COMMISSION CODE IF YOU OPPOSE THIS ACTION.



This notice did not precisely conform to the form of notice specified in section 2301.453(c)(2)
of the occupations code, but differed in two respects. First, Ford's notice referred to the
"Motor Vehicle Commission" rather than the "Motor Vehicle Board," tracking a version of the
notice requirement found in the predecessor statute, the motor vehicle commission code, prior to
1997. See Act of May 20, 1997, 75th Leg., R.S., ch. 639, § 30, 1997 Tex. Gen. Laws 2183, 2199.
Second, Ford's notice referred to the former motor vehicle commission code, while the form of
notice specified by statute had been updated to refer to chapter 2301, occupations code, when the
former code was repealed and recodified without intended substantive change in 2001. See Act of
May 22, 2001, 77th Leg., R.S., ch. 1421, §§ 5, 14, 2001 Tex. Gen. Laws 4570, 4920, 5020.

 Interestingly, by the time of Ford's notices to the Dealerships, the "motor vehicle
board"--the entity referenced in the applicable occupations code version of the statute--no longer
existed. In 2005, the legislature had abolished the board and transferred its functions to the
motor vehicle division of the Texas Department of Transportation. See Act of May 30, 2005,
79th Leg., R.S., ch. 281, §§ 7.01-.06, 2005 Tex. Gen. Laws 778, 839-40. (3)

 After unsuccessfully appealing the terminations to Ford's Dealer Policy Board, the
Dealerships timely filed protests of the terminations with the Division. See Tex. Occ. Code Ann.
§ 2301.453(d). A contested-case hearing was held before a Division administrative law judge (ALJ),
who issued a proposal for decision recommending that the Dealerships' franchise agreements
be terminated. In support, the ALJ made findings of fact addressing the considerations set forth
in section 2301.455, occupations code, and concluded that good cause had been established
for termination of the franchises. See id. §§ 2301.454(d), .455 (West 2004). Additionally, the
ALJ found:


84. Ford's notices of termination identified the Texas Motor Vehicle
Commission rather than the Texas Motor Vehicle Board, as the agency with
which a termination protest should be filed.


85. Ford's notices of termination referred to the Texas Motor Vehicle
Commission Code, rather than Chapter 2301 of the Texas Occupations Code,
as the governing statute.



In light of these findings, the ALJ concluded that "Ford Motor Company's notice[s] of termination
fail to comply with the requirements of Tex. Occ. Code Ann. § 2301.453(c)." The ALJ further
recommended that the Division order that Ford "cease and desist from failure to comply with
the requirements of Tex. Occ. Code Ann. § 2301.453(c)(2)." The ALJ did not, however, determine
that this non-compliance should alter the Division's ruling regarding termination of the
franchise agreements. 

 The Division's director amended two of the ALJ's proposed conclusions of law
to correct typographical errors and, as amended, adopted the ALJ's proposed findings, conclusions,
and recommendations in their entirety. The director ordered that the Dealerships' franchise
agreements would terminate on the date after the order became final and that Ford "shall cease
and desist from failure to comply with the requirements of Tex. Occ. Code Ann. § 2301.453(c)(2)."

 After filing a motion for rehearing with the director, which was denied, the
Dealerships sought judicial review in Travis County district court. Ford subsequently removed the
proceeding to this Court. See Tex. Occ. Code Ann. § 2301.751(b) (West 2004).


ANALYSIS

 The Dealerships do not challenge the Division's findings and conclusions that
good cause exists to terminate their franchises, but bring a single issue complaining that their
substantial rights were nonetheless prejudiced because Ford's notice letters did not, as the Division
found, precisely track the language specified in occupations code section 2301.453(c)(2), but
identified the "Texas Motor Vehicle Commission" rather than the "Texas Motor Vehicle Board" as
the agency with which to file their protests, and identified the "Texas Motor Vehicle Commission
Code" rather than "Chapter 2301, Occupations Code" as the governing statute. The Dealerships
emphasize that the legislature repeatedly used the word "must"--a term denoting a condition
precedent--in requiring that a manufacturer provide the notice specified in subsection (c)(2) before
terminating a franchised dealership. See Tex. Gov't Code Ann. § 311.016(3) (West 2005) ("'[m]ust'
creates or recognizes a condition precedent."); Helena Chem. Co. v. Wilkins, 47 S.W.3d 486, 493
(Tex. 2001) (citing section 311.016). The Dealerships emphasize the following statutory language: 


(a) Notwithstanding the terms of any franchise, a manufacturer, distributor, or
representative may not terminate or discontinue a franchise with a
franchised dealer . . . unless the manufacturer, distributor, or representative
provides notice of the termination or discontinuance as required by
Subsection (c) and:


 (1) the manufacturer, distributor, or representative receives the dealer's
informed written consent;


 (2) the appropriate time for the dealer to file a protest under Subsection
(e) has expired; or


 (3) the board makes a determination of good cause under Subsection (g).


. . . 


(c) Except as provided by Subsection (d), the manufacturer, distributor, or
representative must provide written notice by registered or certified mail to
the dealer and the board stating the specific grounds for the termination or
discontinuance. The notice must:


 (1) be received not later than the 60th day before the effective date of the
termination or discontinuance; and


 (2) contain on its first page a conspicuous statement that reads: 
"NOTICE TO DEALER: YOU MAY BE ENTITLED TO FILE A
PROTEST WITH THE TEXAS MOTOR VEHICLE BOARD IN
AUSTIN, TEXAS, AND HAVE A HEARING IN WHICH YOU
MAY PROTEST THE PROPOSED TERMINATION OR
DISCONTINUANCE OF YOUR FRANCHISE UNDER THE
TERMS OF CHAPTER 2301, OCCUPATIONS CODE, IF YOU
OPPOSE THIS ACTION."


Tex. Occ. Code Ann. § 2301.453 (emphasis added). The Dealerships further emphasize that this
Court in Buddy Gregg Motor Homes, Inc. v. Motor Vehicle Board upheld a motor vehicle board
order that a manufacturer's letter to a dealer threatening termination constituted an ineffective
termination because the letter "d[id] not satisfy all of the statutory requirements." 179 S.W.3d
589, 596, 605-07 (Tex. App.--Austin 2005, pet. denied). From this, the Dealerships conclude
that "[e]ach attempted notice of termination of a dealership franchise MUST contain the EXACT
word-for-word language of an unambiguous statutory disclaimer that was carefully drafted by the
legislature and included in the statute," that Ford's failure to comply rendered its termination letters
ineffective, and that the Division's order therefore violated the occupations code, exceeded the
Division's authority, resulted from "improper procedure," contained an error of law, was an abuse
of the Division's discretion, and was not supported by substantial evidence--in short, requires
reversal under every category of error listed in the APA's definition of the substantial-evidence
standard of review (4)--in failing to enforce "the statutory notice provision as a condition precedent
to termination." We disagree. 

 Statutory construction presents questions of law that we review de novo. See State
v. Shumake, 199 S.W.3d 279, 284 (Tex. 2006). Our primary objective in statutory construction is
to give effect to the legislature's intent. Id. We seek that intent "first and foremost" in the statutory
text. Lexington Ins. Co. v. Strayhorn, 209 S.W.3d 83, 85 (Tex. 2006). We rely on the plain meaning
of the text, unless a different meaning is supplied by legislative definition or is apparent from
context, or unless such a construction leads to absurd results. City of Rockwall v. Hughes,
246 S.W.3d 621, 625-26 (Tex. 2008); see Tex. Gov't Code Ann. § 311.011 (West 2005) ("Words
and phrases shall be read in context and construed according to the rules of grammar and common
usage."). However, with regard to a statute that an agency is charged with enforcing, we give
"serious consideration" to the agency's construction of it, so long as that construction is reasonable
and consistent with the statutory language. See First Am. Title Ins. Co. v. Combs, 258 S.W.3d 627,
632 (Tex. 2008). 

 Although the Dealerships are correct that "must" used in a code denotes a condition
precedent, see Tex. Gov't Code Ann. § 311.016(3), it does not necessarily follow that, as the
Dealerships assume, any non-compliance with the notice requirements by Ford must automatically
invalidate the Division's ultimate good-cause determination. To determine the consequences of
a failure to satisfy a condition precedent, we look to the legislative intent reflected in the statute. 
See Helena Chem Co., 47 S.W.3d at 494-96. Occupations code 2301.453 does not specify any
particular consequences if, as here, a termination notice does not precisely track the form of notice
in section 2301.453(c)(2). Thus, we look to that requirement's underlying purposes. See id. at 495.
The evident purposes of this requirement is to ensure that a dealer facing termination is notified of
its statutory rights to protest the termination and obtain a hearing, and how to do so. The Division's
findings and the record reflect that those purposes were satisfied here.

 At the top of each of Ford's letters was an all-caps, boldface notice informing
the Dealership of its rights to "FILE A PROTEST WITH THE TEXAS MOTOR VEHICLE
COMMISSION [RATHER THAN 'BOARD'] IN AUSTIN, TEXAS, AND HAVE A
HEARING IN WHICH YOU MAY PROTEST THE PROPOSED TERMINATION
OR DISCONTINUANCE OF YOUR FRANCHISE UNDER THE TERMS OF THE
MOTOR VEHICLE CODE [RATHER THAN 'CHAPTER 2301, OCCUPATIONS CODE'] IF
YOU OPPOSE THIS ACTION." The letters also specified the grounds for termination. See
Tex. Occ. Code Ann. § 2301.454(c). These letters prompted the Dealerships to file protests of the
terminations, which they did timely, with the correct agency, and with citations to the correct
governing statute (the occupations code), and the Dealerships went on to participate vigorously in
the ensuing contested-case hearing. There is no contention that any defect in the above notices
prejudiced the Dealerships' abilities to assert their protest rights. In fact, the form language specified
in the occupations code, like the language in Ford's notice, also inaccurately identified the agency
with which the protest was to be filed. While the correct entity was the Division, Ford identified the
agency as the "Motor Vehicle Commission," and the occupations code identified the agency as the
"Motor Vehicle Board." Despite these inaccuracies, the Dealerships managed to file their protests
with the correct entity--the Division.

 On this record, we conclude that the Division's decision that any defect in Ford's
notice-of-termination letters did not render Ford's termination or the Division's proceedings invalid
under the occupations code was reasonable and consistent with the statute, and that we should
defer to it. See First Am. Title Ins. Co., 258 S.W.3d at 632; Helena Chem Co., 47 S.W.3d at 494-96.
Contrary to the Dealership's arguments, Buddy Gregg does not stand for the proposition that any
and all deviations from the statutory form of notice render a manufacturer's termination letter
ineffective as a matter of law.

 Buddy Gregg involved a deteriorating relationship between a motor home
manufacturer (Liberty Coach) and a motor home dealer (Buddy Gregg). At one point, Liberty Coach
sent Buddy Gregg a letter threatening to terminate its franchise agreement unless Buddy Gregg
agreed to numerous modifications of the agreement within twenty-four hours. See id. at 596. As this
Court observed, "[t]he letter did not satisfy the requirements of the occupations code" for a
termination: "it did not contain the 'notice to dealer' termination language"--i.e., "a conspicuous
statement on the first page notifying the dealer of its right to protest the termination and have a
hearing before the Board"--"it was not sent to the Board, and it did not specify the grounds
for termination." Id. at 594, 596; cf. Tex. Occ. Code Ann. § 2301.454(c). Thereafter, the parties
continued to negotiate their agreement and conduct business together. However, after litigation
arose, Buddy Gregg took the position that Liberty Coach's letter was an unlawful termination of the
agreement. See Buddy Gregg, 179 S.W.3d at 596. The Board eventually determined that the letter
instead constituted an ineffective termination attempt. See id. at 605-07. We gave deference to the
Board's construction of the occupations code as reasonable and not inconsistent with the statute's
plain meaning. See id. at 610 n.13 (citing Tarrant Appraisal Dist. v. Moore., 845 S.W.2d 820,
823 (Tex. 1993)).

 In sum, our holding in Buddy Gregg was merely that, on that record, the Board's
construction of the occupations code to determine the legal effect of Liberty Coach's non-compliance
was reasonable, not inconsistent with the statute's plain meaning, and entitled to deference. Here,
as previously explained, the record is vastly different, and the agency reached a different result
when determining the legal effect of a manufacturer's non-compliance with occupations code
section 2301.453. Nonetheless, we should, just as in Buddy Gregg, give deference to the Board's
construction of the occupations code regarding the consequences of that non-compliance for the
same reasons.

 The Dealerships' arguments are each premised on the contention that because
Ford's notice-of-termination letters were found not to have complied with occupations code
section 2301.453(c)(2), it follows that the Division committed each category of error identified in
government code section 2001.174 in proceeding to find good cause for Ford to terminate the
franchises. Having rejected that core contention, we overrule the Dealerships' sole issue.


CONCLUSION

 Having overruled the Dealerships' sole issue, we affirm the Division's order.



 __________________________________________

 Bob Pemberton, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed: August 27, 2010

1. In the interim, the legislature has, effective November 1, 2009, transferred the Division's
functions to the newly created Texas Department of Motor Vehicles. See Act of May 18, 2009,
81st Leg., R.S., ch. 933, § 6.01(a), 2009 Tex. Gen. Laws 2485, 2519. As it was the former Division
that issued the order on appeal, we will refer to that entity rather than its successor for clarity.
2. We cite the current version of the code unless there are material intervening substantive
changes. 
3. And, as previously noted, the legislature later moved those functions yet again to the
department of motor vehicles. 
4. See Tex. Gov't Code Ann. § 2001.174 (West 2008) (reviewing court may not substitute
its judgment on the weight of the evidence on questions committed to the agency's discretion,
but must reverse and remand the agency decision if the appellant's substantial rights have
been prejudiced because the agency's findings, inferences, conclusions, or decisions (1) violate a
constitutional or statutory provision; (2) exceed the ALJ's statutory authority; (3) were made through
unlawful procedure; (4) were affected by other error of law; (5) are not reasonably supported
by substantial evidence considering the reliable and probative evidence in the record as a whole; or
(6) are arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise
of discretion).